Filed 6/13/13  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C069375 |
| Plaintiff and Respondent, | (Super. Ct. No. MCYKCRF10570) |
| v. | |
| ROBERT WAYNE THOMPSON, | |
| Defendant and Appellant. | |

Defendant Robert Wayne Thompson appeals the judgment entered following the revocation of his probation and the imposition of a previously suspended seven-year sentence.  Defendant contends the introduction at the probation revocation hearing of Proposition 115 hearsay testimony without a finding of good cause violated his right to confront witnesses, and trial counsel performed ineffectively in failing to object to the evidence.  We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a negotiated disposition, defendant entered pleas of no contest to assault by means of force likely to produce great bodily injury and conspiracy (Pen.

1

Code, §§ 245, subd. (a)(1), 182, subd. (a)(1)),[1] and admitted a great bodily injury enhancement (§ 12022.7, subd. (a)).[2]  In exchange, the court dismissed the remaining counts and sentenced defendant to seven years in prison, with execution suspended.  The court placed defendant on five years' probation.  Defendant's probation required him to obey all laws and abstain from alcohol.

## Revocation of Probation

In March 2011 the district attorney filed a petition for revocation of probation. The petition alleged that in February 2011 defendant committed numerous crimes: infliction of corporal injury on a cohabitant, infliction of great bodily injury under circumstances involving domestic violence, assault with a deadly weapon, and battery causing serious bodily injury.  (§§ 273.5, subd. (a), 12022.7, subd. (e), 245, subd. (a)(1), 243, subd. (d).)

The petition also alleged defendant violated his probation in March 2011 by violating a criminal protective order and dissuading a witness from making a report to law enforcement.  (§§ 166, subd. (c)(1), 136.1, subd. (b)(1).)

The charges that gave rise to the violation of probation also gave rise to new criminal charges being filed.  The court held a combined preliminary hearing on the new felony charges and violation of probation hearing.  At the hearing, the court took judicial notice of a criminal protective order in the new case.  The order prohibited defendant from having any contact with Rebecca Elliot.  The court made no finding that any witnesses were unavailable.

---

[1]  Further unspecified statutory references are to the Penal Code.

[2]  Since the issues on appeal do not implicate the facts underlying defendant's offenses, we omit a factual summary of the charges.

During the hearing, the prosecution presented testimony by Officer Travis Cooke, who stated he was qualified to provide Proposition 115 testimony at preliminary hearings.[3]

On February 6, 2011, Cooke was dispatched to a residence following a report of a fight between defendant and Elliot. When he arrived, Cooke found Elliot upset and crying on the front porch. Cooke saw blood on Elliot's face and noticed her nose appeared to be broken. The prosecution entered into evidence photographs Cooke took of Elliot that morning. Cooke confirmed the photographs accurately depicted Elliot's injuries.

Cooke asked Elliot about the incident. Elliot told Cooke defendant slapped her in the face with his open hand. She fought back. Defendant began punching Elliot in the face, "hitting me like a man." When Elliot tried to call 911, defendant's mother, Linda Browning, took the phone away from her.

Elliot told Cooke that she and defendant had dated for about a year, and she often spent the night with him.

Cooke spoke with Browning. Browning, upset, described how defendant hit Elliot in the face with closed fists. After Browning saw Elliot with a knife, she grabbed Elliot's arms and Elliot dropped the knife.

Cooke also spoke with defendant at the scene. He was unable to tell if defendant had been drinking. After defendant was transported to the police station, he tested positive for alcohol.

Cooke summoned medical assistance. Elliot was transported to a local hospital. The next day, when Cooke contacted hospital personnel, he was told Elliot had suffered a

---

[3] Proposition 115, approved by the voters in 1990, amended section 872, subdivision (b) to allow hearsay evidence admissible at preliminary hearings as provided by law. (*Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1070-1071.)

broken nose. When Elliot spoke with Cooke the following day, she told him she had a broken nose and a concussion.[4]    The prosecution introduced into evidence recordings of calls and visits between Elliot and defendant while defendant was in jail. Cooke identified the voices on a March 7, 2011, visit recording as those of Elliot and defendant and heard defendant tell Elliot not to talk to the district attorney. Defendant also told Elliot he would be charged with another crime for contacting her. He told Elliot to have the protective order "dropped." Elliot asked defendant for money and he told her he could have his daughter Kayla give her some.

Cooke also identified three telephone recordings made on March 8, 2011. In each recording defendant told Elliot not to speak with the district attorney. The pair also discussed how defendant would get money to Elliot, and defendant told her he would get into trouble for contacting her. In a March 9, 2011, telephone call, defendant again told Elliot he would get her money.

Cooke testified defendant had one visit and four telephone calls with Elliot. When Cooke spoke to Elliot just prior to the hearing, she did not deny having contact with defendant after the issuance of the criminal protective order.

Defendant presented no evidence at the hearing. The court found defendant in violation of his probation, sustaining the violations of probation alleged in the petition and finding that the four telephone contacts between defendant and Elliot constituted continuing violations of defendant's probation.

At sentencing on the violation of probation, the court imposed the previously suspended sentence of seven years in prison. Defendant filed a timely notice of appeal.

---

[4] Cooke took photographs of Elliot the day after the incident. The prosecution introduced the photographs into evidence.

## DISCUSSION

Defendant's only argument on appeal concerns the court's consideration of hearsay testimony in revoking his probation. In response, the People contend defendant has forfeited his objections because he failed to make them during the hearing on his probation revocation. We will assume for purposes of argument that defendant's hearsay objection has not been forfeited but conclude, nonetheless, that the contention fails on the merits.

**Hearsay in Probation Revocation Proceedings Generally**

A trial court may revoke probation in the interests of justice and if the court has reason to believe that the defendant has violated any of the probation conditions. (§ 1203.2, subd. (a).) A probation violation must be established by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441; *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.)

The Sixth Amendment to the United States Constitution does not apply to probation revocation proceedings, since they are not criminal trials. (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411.) However, the right to confrontation at probation revocation proceedings derives from the due process clause of the Fourteenth Amendment to the federal Constitution. (*Ibid.*) Due process during a probation revocation hearing requires that the defendant be given the right to confront and cross-examine witnesses unless the court finds good cause for not allowing confrontation. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 786 [36 L.Ed.2d 656].)

The rules of evidence that pertain in criminal trials are relaxed in probation revocation proceedings. "Under this approach, hearsay evidence that is inadmissible to prove guilt in a criminal trial may be admissible to prove an adult probation violation under certain circumstances." (*In re Eddie M*. (2003) 31 Cal.4th 480, 501.) The admissibility of hearsay evidence supporting a petition to revoke probation presents a

5

mixed question of law and fact, which we review de novo. (*People v. Cromer* (2001) 24 Cal.4th 889, 894-904.)

### *The Hearsay Objection*

The hearsay issues in the present case are created by the testimony of Officer Cooke. Cooke testified regarding his arrival at the scene of a domestic disturbance, his observation of Elliot's injuries, and her shaken demeanor.

The prosecution also introduced phone and jail visit records between defendant and Elliot. These recordings revealed defendant violated the court's criminal protective order prohibiting contact with Elliot. In the recordings, defendant instructed Elliot not to cooperate with the district attorney. Defendant does not object to the consideration of these records.

Defendant's hearsay objection is directed at statements made by Elliot, Browning, and medical personnel, introduced through Cooke's testimony, regarding the domestic violence incident. However, Cooke arrived on the scene shortly after the incident. Responding to a domestic violence call, he observed Elliot's demeanor and her injuries. Regardless of Elliot's statements as to how her injuries occurred, Cooke's testimony, as a percipient witness, of finding a crying, shaken woman with an apparently broken nose was nonhearsay testimony establishing the critical facts. Thus, even if the trial court erred in entertaining the hearsay statements, the testimony derived from Cooke's personal knowledge rendered the error harmless beyond a reasonable doubt. (*People v. Arreola* (1994) 7 Cal.4th 1144, 1161.)

Moreover, the prosecution established defendant violated his probation via the jail telephone and visit recordings, revealing he violated the criminal protective order. Any conceivable error in admitting the hearsay evidence was harmless.

Our conclusion in this regard disposes of the People's forfeiture claim and defendant's related claim of ineffective assistance of counsel, which requires defendant to establish it is reasonably probable that a more favorable result would have been reached

6

absent counsel's deficient performance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674].)  Because we find the court's admission of the hearsay evidence harmless beyond a reasonable doubt, counsel did not perform ineffectively in failing to object to the evidence.

## DISPOSITION

The judgment is affirmed.


           RAYE         , P. J.


We concur:


      HULL        , J.


      MURRAY     , J.